## KAHN v. COMMISSIONER OF INTERNAL REVENUE (two cases).

### No. 137.

Circuit Court of Appeals, Second Circuit.

Jan. 8, 1940.

For opinion of the Board of Tax Appeals, see 38 B.T.A. 1417.

Llewellyn A. Luce, of Washington, D. C., for petitioners.

Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key and Howard D. Pack, Sp. Assts. to Atty. Gen., for respondent.

Before SWAN, AUGUSTUS N. HAND, and PATTERSON, Circuit Judges.

PER CURIAM.

The petitioners are partners in a New York firm engaged in the business of converting cotton gray goods into yard goods for sale to manufacturers of articles of clothing. In the year 1933 the partnership, purporting to act pursuant to section 23(j) of the Revenue Act of 1932, 47 Stat. 180, 26 U.S.C.A. § 23(k), charged off as worthless certain overdue accounts. These deductions, reflected in the income tax returns of the petitioners, the commissioner disallowed, resulting in the deficiencies complained of. The Board has affirmed the action of the commissioner.

The debts charged off as worthless represented sales to customers in South American countries which in November 1933 had laid embargoes against sending money abroad. The firm received reports from its agents in the countries in which the debtors were located that due to the embargoes it was impossible to get any money out of those countries and that it was uncertain when, if ever, the accounts would be paid. The members of the firm, with its manager and auditor, determined that the accounts were worthless and charged them off on its books on December 31, 1933. There were nine such accounts aggregating some $8,500. The embargoes were lifted in March 1934 and almost all these accounts were paid during that year. For years prior to 1933 it was the established policy and custom of the firm to charge off at the end of each year all foreign accounts several months overdue, which had been shipped on a cash basis and which the firm had attempted to collect. If and when such accounts were collected later, they were included in the firm's income. In all years from 1930 to the date of the hearing before the Board (May 27, 1938), except the year 1933, the amount of recovery had exceeded the amount of the

accounts so charged off and the commissioner had accepted that method of accounting. In 1933, however, he disallowed the charge off of $8,521.52 but allowed recoveries amounting to $4,374 to remain in the firm's income.

It is not to be doubted that the petitioners acted in good faith; but to justify charging off a debt as worthless the taxpayer must also act reasonably, investigating the facts relating to the debt in question and drawing reasonable inferences with respect to its worthlessness from the information obtained. Sherman & Bryan v. Blair, 2 Cir., 35 F.2d 713, 715. Neither the existence of the embargoes nor the reports received from the firm's South American agents were enough to justify an inference that the debts charged off would never be paid. The embargo prevented the debtors from remitting foreign exchange in 1933, but this was likely to be only a temporary condition, though of indefinite duration, nor would it prevent collection of payment in the currency of the countries where the debtors were respectively located. The situation presented was far different from that of a governmental seizure of property of an alien enemy, such as was considered in United States v. S. S. White Dental Mfg. Co., 274 U.S. 398, 47 S.Ct. 598, 71 L.Ed. 1120. We think the Board was right in following its own prior ruling as to the effect of a moratorium. See Richards & Hirschfield, Inc., v. Commissioner, 24 B.T.A. 1289. The reports from the firm's agents to the effect that owing to the embargoes money could not be sent out and "it was uncertain when, if ever, the accounts would be paid," were accompanied by no information as to the financial condition of the debtors; they add nothing to the embargo as a basis for charging off the accounts.

Some of the accounts were several months overdue but obviously the mere failure of a debtor to pay promptly does not justify a determination that the debt is worthless in the absence of any investigation as to the debtor's solvency. See Clark v. Commissioner, 3 Cir., 85 F.2d 622, 624; 3 Paul & Mertens' Law of Federal Income Taxation (1934), 440. Indeed, it is clear from the auditor's testimony (fol. 179) that the accounts were charged off because of the embargo and because of the firm's policy and practice to write off all foreign accounts several months overdue which had been shipped on a cash basis.

Although it is argued that such practice, in which the commissioner acquiesced both before and subsequent to the year 1933, is enough to support the deductions, this contention cannot prevail. The statutory requirements as to deductions cannot be overridden by the fact that the commissioner has failed to correct errors of the taxpayer in other years. Askin & Marine Co. v. Commissioner, 2 Cir., 66 F.2d 776, 777.

Finally, it is urged that if the claimed deductions be disallowed, then the recoveries of $4,374.06 on debts charged off in prior years pursuant to the firm's practice should not be included in its income for 1933. Assuming that this contention, which apparently was not presented to the Board, may be considered by us, it cannot withstand scrutiny. Having received the benefit of deduction for worthless debts in prior years, any subsequent recoveries thereon must properly be treated as income of the year when realized. Commissioner v. Liberty Bank & Trust Co., 6 Cir., 59 F.2d 320; Putnam Nat. Bank v. Commissioner, 5 Cir., 50 F.2d 158. The disallowance of the deduction for accounts written off in 1933 prevents the sums collected on such accounts in 1934 from being properly treated as income for that year, but it can have no effect on the recoveries realized in 1933.

Orders affirmed.