### ROBINSON et al. v. COMMISSIONER OF INTERNAL REVENUE.

### No. 12896.

United States Courts of Appeals Fifth Circuit.

April 8, 1950.

J. Barnwell Phelps, New Orleans, La., for petitioners.

Lee A. Jackson, Ellis N. Slack, Melva M. Graney, Sp. Assts to Atty. Gen., Theron Lamar Caudle, Asst. Atty. Gen., Chas. Oliphant, Chief Counsel, Bureau of Internal Revenue, Washington, D. C., Rollin H. Transue, Sp. Atty., Bureau of Internal Revenue, Washington, D. C., for respondent.

Before HOLMES, McCORD and BORAH, Circuit Judges.

HOLMES, Circuit Judge.

The question presented on this petition for review is whether the taxpayers are entitled to a loss deduction of $10,000 claimed by them under Section 23(e) of the Internal Revenue Code, 26 U.S.C.A. § 23(e). Due to the forgiveness feature applicable to the years 1942 and 1943, the deficiencies involved are for the year 1943, although they resulted from adjustments in income for the year 1942. The taxpayers filed their income-tax returns on a community property basis. The respondent determined a deficiency against each of them based upon the disallowance of a deduction of $10,000 claimed by them on a community property basis in connection with the operations of the Destin Saw Mill Company.

These are the facts: In 1939, Robert G. Robinson bought certain timber rights on land located near Destin, Florida, for $29,000. The purchase agreement provided that the taxpayer would remove the timber from the land within five years, except that on a certain tract the timber was to be removed within two years from December 31, 1938. In 1939, the taxpayer made a bargain with the owner of a sawmill and logging equipment to log and convert the timber into lumber at so much per one thousand feet. Cutting and converting operations began in 1939, and were carried on until 1941, when the Army took over a near-by national forest for bombing activities, thus making it impossible for employees to continue cutting. In 1942, one of the former owners of the timber that Robinson had bought threatened to sue him for damages for timber cut over the line, where he had no right to cut, and for damages to roads owned by claimant. In exchange for a release from all such claims for damages, Robinson gave up his right to cut any remaining timber on the tract. During the same year, he paid to the bank $10,000, which represented the balance due on a note evidencing the purchase price of his cutting rights in that vicinity.

In his income-tax return for 1939, Robinson took a deduction of $16,548.76 as the cost of sales representing timber so purchased, and in 1940 he took a deduction of $14,188.65 as cost of sales of such timber. The total deductions for both years amounted to $30,737.41. In 1943, the taxpayer and his wife filed their income-tax returns on a community property basis, and deducted the sum of $5,000 each, representing a $10,000 loss arising in connection with Robinson's business interest. In upholding the Commissioner's determination, the Tax Court found that he had claimed and been allowed deductions for the entire costs of the timber, $29,000, in years prior to 1942, and was not entitled to the claimed deduction of $10,000 for the year 1943.

In claiming such a loss deduction under Section 23(e) of the Internal Revenue Code, Robinson contends that a deduction in prior years by him of $10,000 of the $29,000 cost was erroneous in that it should have been deducted as cash advanced for sawmill expenses and not as part of the cost of sales. The Commissioner, in disallowing taxpayers' deductions, found no merit in the contention that they had an unreturned cash investment of $10,000 from the operation of the sawmill. The Tax Court, in upholding the Commissioner, found that the taxpayers failed to overcome the *prima facie* correctness attaching to the Commissioner's determination. The Tax Court found as a fact that Robinson wrote off the entire $29,000 cost of the timber as cost of sales in his 1939 and 1940 tax returns, and the correctness of that finding is conceded. The Tax Court was not persuaded that his 1939 and 1940 returns were erroneous, and it held that he had received a tax-credit for the entire $29,000. It further held that the taxpayers were not entitled to deduct $10,000 of the $29,000 in 1942, citing Ilfeld Co. v. Hernandez, 292 U.S. 62, 68–69, 54 S.Ct. 596, 78 L.Ed. 1127; National Bronx Bank v. Commissioner, 2 Cir., 147 F.2d 651, certiorari denied, 325 U.S. 872, 65 S.Ct. 1412, 89 L.Ed. 1990; Exchange State Bank v. Commissioner, 8 T.C. 721, 724–725; Bank of Newberry v. Commissioner, 1 T.C. 374, 377–378.

 Even though Robinson had deducted too much of the $29,000 as cost of sales in his 1940 return, he cannot now claim a second deduction in 1942 in same amount as that claimed to be error. The record shows that he reported net income of $4,383.79 in his 1940 return; that the Commissioner allowed the deductions claimed in the return; and that he received a tax benefit from the 1940 deduction for cost of sales. This court has repeatedly held that when a taxpayer receives a tax advantage from an erroneous deduction, he may not deduct the same amount in a subsequent year after the Commissioner is barred from adjusting the tax for the prior year. See Wheelock v. Commissioner, 5 Cir., 77 F.2d 474; Alamo National Bank v. Commissioner, 5 Cir., 95 F.2d 622; Orange Securities Corporation v. Commissioner, 5 Cir., 131 F.2d 662, 663; Johnson v. Com-

missioner, 5 Cir., 162 F.2d 844. Assuming that the amount of the deduction taken in 1940 was erroneous to the extent of $10,000, the taxpayer received a tax benefit from the deduction, and is in no position to claim a second deuction of $10,000.

Affirmed.